UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| YIESHA HILLIARD, <br><br> Plaintiff, <br><br> v. <br><br> RANDSTAD PROFESSIONALS US, LLC, <br><br> Defendant. | **Civil Action File No.** <br><br><br> **Jury Trial Demanded** |

## COMPLAINT

Plaintiff Yiesha Hilliard ("Ms. Hilliard") files her Complaint against the above-named Defendant as follows.

## INTRODUCTION

1. This is a complaint for violation of (1) Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.*, as amended (the "ADA"), (2) the Pregnancy Discrimination Act of 1978, which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (the "PDA"), (3) the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA"), and (4) the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Ms. Hilliard's claims pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this Court because the acts or omissions described herein occurred within the Atlanta Division of the Northern District of Georgia.

## PARTIES

4. Ms. Hilliard is a resident and citizen of the State of Georgia. She submits to the jurisdiction of this Court.

5. Defendant Randstad Professionals US, LLC ("Randstad") is a foreign limited liability company authorized to conduct business in Georgia. Randstad is an employment and recruiting agency for temporary and permanent staffing. Randstad can be served with the summons and complaint by personal service on its registered agent, Corporation Service Company, whose office is located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## ADMINISTRATIVE PROCEDURES

6. Ms. Hilliard has exhausted her administrative remedies with respect to the claims asserted herein.

7. Ms. Hilliard filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on December 2, 2021.

- 3 -

8. The EEOC issued a "Notice of Right to Sue" on January 14, 2022, entitling an action to be commenced within 90 days of receipt of such notice.

## FACTUAL ALLEGATIONS

9. Ms. Hilliard began full-time employment with Randstad in July 2020. Prior to July 2020, Ms. Hilliard worked for Randstad in the same capacity as a contract employee since January 2019.

10. Ms. Hilliard took maternity leave from February 1, 2021 through June 30, 2021. She returned to work from maternity leave on July 1, 2021.

11. Randstad formally designated a portion of Ms. Hilliard's maternity leave as leave under the FMLA.

12. Prior to her return from maternity leave, Ms. Hilliard never received any formal or informal discipline from Randstad.

13. After Ms. Hilliard returned to work from maternity leave, her supervisor, Elizabeth Clement ("Clement"), significantly increased her work assignments, including those related to the completion of audit reports. Before her maternity leave, Clement required Ms. Hilliard to complete an audit report once every week. However, following Ms. Hilliard's return from maternity leave, Clement required Ms. Hilliard to complete an audit report every day.

14. In an effort to complete the daily audit reports required by Clement, Ms.

Hilliard began working more than 40 hours per week.

15. Following childbirth, Ms. Hillard began suffering from postpartum depression, which significantly impacted her ability to think, focus, concentrate, sleep, and work, among other negative effects.

16. Ms. Hillard also began taking prescription medication to treat her postpartum depression.  This medication caused side effects including, among others, drowsiness and inability to focus.

17. Further, after returning from maternity leave, Ms. Hilliard required frequent lactation breaks during the workday to breastfeed her baby and pump breast milk.

18. Because of Ms. Hilliard's postpartum depression, the side effects of her medication, and her need for frequent lactation breaks, Ms. Hilliard was not able to complete the daily audit reports required by Clement.

19. When discussing Ms. Hilliard's work assignments, including the audit reports, Clement complained to Ms. Hilliard that she lacked concentration and seemed unable to focus.  Ms. Hilliard responded by explaining to Clement that her inability to focus and lack of concentration was caused by her postpartum depression, the side effects of her medication, and her need for frequent lactation breaks.

20. Ms. Hilliard asked Clement to consider the symptoms of her postpartum depression, the side effects of her medication, and her need for lactation breaks when assessing her work performance, including her productivity and ability to focus and concentrate.  Ms. Hilliard also asked Clement to adjust her work assignments and productivity expectations in light of her disability- and pregnancy-related limitations.

21. After these discussions, on August 3, 2021, Clement placed Ms. Hilliard on a performance improvement plan.  In the plan, Clement specifically noted Ms. Hilliard's "lack of ability to focus" as a reason for the disciplinary action.  The plan also included many false and inaccurate assertions about Ms. Hilliard's work performance.

22. Clement terminated Ms. Hilliard on September 24, 2021 due to Ms. Hilliard's alleged inability to complete work assignments timely.

## COUNT ONE

### Failure to Accommodate in Violation of Title I of the ADA

23. Ms. Hilliard incorporates the above paragraphs as if fully set forth herein.

24. Title I of the ADA requires covered employers to reasonably accommodate an employee's disability.

25. Ms. Hilliard was a qualified individual with a disability under the ADA, as

she was able to perform the essential functions of her position with or without accommodation.

26. Randstad violated the ADA by failing to engage in an interactive process with Ms. Hilliard following her request for accommodation to determine if her disability could be reasonably accommodated.

27. For example, following her return from maternity leave and development of postpartum depression, Ms. Hilliard requested that Clement adjust her productivity expectations and work assignments due to the symptoms of her postpartum depression and the side effects of her medication. Despite this request, Randstad failed to engage in the interactive process and/or accommodate Ms. Hilliard's disability as required by the ADA.

28. Ms. Hilliard is entitled to recover all damages caused by Defendant's ADA violation, including lost wages, compensatory damages, attorneys' fees, and litigation costs.

## COUNT TWO

### Disability Discrimination in Violation of Title I of the ADA

29. Ms. Hilliard incorporates the above paragraphs as if fully set forth herein.

30. Title I of the ADA prohibits covered employers from terminating an employee due to the employee's disability or perceived disability.

31. Ms. Hilliard was a qualified individual with a disability under the ADA, as she was able to perform the essential functions of her position with or without accommodation.

32. Randstad violated the ADA by terminating Ms. Hilliard's employment due to her disability. Specifically, Randstad terminated Ms. Hilliard based on false allegations of poor performance, when the actual motivation behind Ms. Hilliard's termination was her disability. Moreover, to the extent Ms. Hilliard was unable to meet performance expectations, such inability was the result of her disability and Randstad's failure to accommodate her disability.

33. Ms. Hilliard is entitled to recover all damages caused by Defendant's ADA violation, including lost wages, compensatory damages, attorneys' fees, and litigation costs.

## COUNT THREE

**Failure to Accommodate in violation of the PDA**

34. Ms. Hilliard incorporates the above paragraphs as if fully set forth herein.

35. The PDA requires covered employers to accommodate an employee's needs related to pregnancy, including needs related to breastfeeding and lactation.

36. Randstad violated the PDA by failing to accommodate Ms. Hilliard's pregnancy-related needs. Specifically, Ms. Hilliard required and requested

adjustments to her productivity expectations and work assignments to accommodate her need for frequent lactation breaks. However, despite Ms. Hilliard's requests, Randstad failed to accommodate her pregnancy-related needs.

37. Ms. Hilliard is entitled to recover all damages caused by Defendant's PDA violation, including lost wages, compensatory damages, attorneys' fees, and litigation costs.

## COUNT FOUR

### Pregnancy (Sex) Discrimination in violation of the PDA

38. Ms. Hilliard incorporates the above paragraphs as if fully set forth herein.

39. The PDA prohibits covered employers from terminating employees due to pregnancy and pregnancy-related needs, including breastfeeding and lactation.

40. Randstad violated the PDA by terminating Ms. Hilliard's employment due to her need to take frequent lactation breaks. Specifically, Randstad terminated Ms. Hilliard based on false allegations of poor performance, when the actual motivation behind Ms. Hilliard's termination was her pregnancy and pregnancy-related needs. Moreover, to the extent Ms. Hilliard was unable to meet performance expectations, such inability was the result of her need to take frequent lactation breaks and Randstad's failure to accommodate such

pregnancy-related need.

41. Ms. Hilliard is entitled to recover all damages caused by Defendant's PDA violation, including lost wages, compensatory damages, attorneys' fees, and litigation costs.

## COUNT FIVE

### Retaliation in violation of the FMLA

42. Ms. Hilliard incorporates the above paragraphs as if fully set forth herein.

43. The FMLA prohibits covered employers from retaliating against employees because of their use of or need for FMLA leave.

44. As described above, Randstad terminated Ms. Hilliard's employment shortly after her return from FMLA leave.

45. Randstad terminated Ms. Hilliard based on false allegations of poor performance, when the actual motivation behind Ms. Hilliard's termination was her need for and use of FMLA leave.

46. Randstad violated the FMLA by terminating Ms. Hilliard's employment because of her need for and use of FMLA leave.

47. Ms. Hilliard is entitled to recover all damages caused by Defendant's FMLA violation, including lost wages, liquidated damages, attorneys' fees, and litigation costs.

## COUNT SIX

## Retaliation in violation of the FLSA

48. Ms. Hilliard incorporates the above paragraphs as if fully set forth herein.

49. The FLSA guarantees employees of covered employers, such as Randstad, the right to take lactation breaks at work.

50. Further, the FLSA prohibits employers from retaliating against employees who exercise their rights under the FLSA, including their right to take lactation breaks.

51. As described above, Ms. Hilliard exercised her right under the FLSA to take lactation breaks at work.

52. Randstad terminated Ms. Hilliard based on false allegations of poor performance, when the actual motivation behind Ms. Hilliard's termination was her need for lactation breaks.

53. Randstad violated the FLSA by terminating Ms. Hilliard's employment because of her need for lactation breaks.

54. Ms. Hilliard is entitled to recover all damages caused by Defendant's FLSA violation, including lost wages, liquidated damages, compensatory damages, attorneys' fees, and litigation costs.

## COUNT SEVEN

### Failure to Pay Minimum Wage and Overtime in Violation of the FLSA

55. Ms. Hilliard incorporates the above paragraphs as if fully set forth herein.

56. The FLSA requires covered employers, such as Randstad, to pay employees at least minimum wage for all working hours.

57. The FLSA requires covered employers, such as Randstad, to pay all non-exempt employees 1.5 times their regular hourly rate for all working hours over 40 per week.

58. Ms. Hilliard was not subject to any exemption from overtime pay under the FLSA and applicable regulations.

59. As set forth above, following her return from maternity leave, Ms. Hilliard regularly worked more than 40 hours per week in an effort to comply with Randstad's productivity expectations.  However, Randstad only compensated Ms. Hilliard for 40 hours per week, and it therefore failed to pay Ms. Hilliard minimum wage for each working hour as required by the FLSA.  Further, Randstad also failed to pay Ms. Hilliard 1.5 times her regular hourly rate for her working hours over 40 per week as required by the FLSA.

60. Randstad knew or should have known that Ms. Hilliard regularly worked more than 40 hours per week.  Therefore, Randstad willfully violated the

FLSA in failing to pay Ms. Hilliard proper minimum wage and overtime.

61. Ms. Hilliard is entitled to recover all damages caused by Defendant's FLSA violations, including unpaid wages and overtime, liquidated damages, and attorneys' fees and costs.

Based on the above, Ms. Hilliard demands a jury trial on all triable issues and asks the Court for the following relief:

(1) lost back pay,

(2) reinstatement, or front pay in lieu of reinstatement,

(3) compensatory damages as permitted by the ADA, the PDA, and the FLSA,

(4) liquidated damages as permitted by the FMLA and the FLSA,

(5) prejudgment interest,

(6) litigation costs,

(7) attorneys' fees, and

(8) other relief deemed appropriate by the Court.

Respectfully submitted on April 14, 2022.

**Regan Keebaugh**
Georgia Bar No. 535500
Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave., Suite 1080
Decatur, Georgia 30030
T: (678) 271-0300

F: (678) 271-0311
regan@decaturlegal.com